**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1257
_____

In re:  NATIONAL POOL CONSTRUCTION, INC.,
D/B/A National Pools & Spas,
D/B/A National Award Winning Pools & Spas


SCOTT C. PYFER, Liquidating Trustee for National Pool Construction, Inc.,
Appellant

v.

AMERICAN MANAGEMENT SERVICES, INC.; T.R. GRAY LLC;
JAMES WORTHINGTON; TD BANK N.A. and T.D. AUTO FINANCE,
as successors in interest to CHRYSLER FINANCIAL CORP;
AVALON BAY COMMUNITIES, INC.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 3-13-cv-02667)
District Judge:  Honorable Joel A. Pisano
_____

Submitted Under Third Circuit LAR 34.1(a)
March 17, 2015
_____

Before: RENDELL, FUENTES and BARRY, Circuit Judges

(Filed: April 2, 2015)

—————————

## OPINION*

—————————

BARRY, <u>Circuit Judge</u>

Scott C. Pyfer, Liquidating Trustee under National Pool Construction, Inc.'s confirmed plan of reorganization, appeals from the District Court's order affirming the Bankruptcy Court's grant of summary judgment in favor of a former management consultant to the company. We will affirm.

### I.

Pursuant to the plan of reorganization in National Pool's Chapter 11 bankruptcy proceeding, a liquidating trust was formed for the benefit of certain of the company's creditors. Pyfer was appointed Liquidating Trustee ("Trustee"). On September 16, 2011, the Trustee filed an adversary proceeding against American Management Services, Inc. ("AMS") and several others,[1] seeking to avoid and recover allegedly fraudulent transfers under the Bankruptcy Code and New Jersey's Uniform Fraudulent Transfer Act ("NJUFTA"). As relevant to this appeal, the Trustee alleged that payments National Pool made to AMS from October 2005 to August 2006 under an agreement for AMS's consulting services were avoidable fraudulent transfers.

Consistent with the Bankruptcy Court's initial scheduling order, entered in

—————————

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Only the claims against AMS are now at issue. The remaining defendants were either dismissed on consent of the Trustee or have had default judgments entered against them.

January 2012, AMS filed its first motion for summary judgment on August 20, 2012. It later withdrew this motion, however, and, as requested by the parties, the Court entered an amended scheduling order extending the discovery deadline from June 29, 2012 to December 15, 2012, and the deadline for filing motions to February 15, 2013.

After changing counsel in early December 2012, AMS filed a second motion for summary judgment on February 15, 2013, consistent with the amended scheduling order. On the evening of March 11, 2013, the day before the motion's return date, the Trustee filed a five-page "opposition," pointing primarily to difficulties its counsel had had in scheduling a deposition for a National Pool employee and to various "agreements" with prior AMS counsel to extend deadlines. The sole basis offered in explanation of why the Bankruptcy Court should deny the motion was as follows:

> Prior counsel already filed a motion for summary judgment, which was withdrawn, based on the parties['] agreement that material issues of fact preclude entry of summary judgment in this adversary proceeding and to proceed with discovery and expert reports. Based on the parties' agreements and the posture of this adversary proceeding, Defendant AMS should not have filed the instant Summary Judgment Motion.

(App. 448.) At the hearing on the motion, the Trustee's counsel admitted that although she received AMS's motion papers the week of February 20, 2013, she did not contact opposing counsel until March 11 to request that he withdraw the motion based on the purported agreements with AMS's prior counsel. She suggested that AMS's motion itself raised a factual dispute, and that "all the parties had agreed" that a summary judgment motion was not "plausible at this point." (App. 455-56.) New counsel for AMS denied

3

knowledge of an agreement, and pointed to the scheduling order on the docket. The Court rejected the Trustee's arguments, concluding that AMS "made out a *prima facie*, the proofs submitted make out a *prima facie* or establish reasonably equivalent value defense." (App. 456.) The Court explained that it "reviewed this as an uncontested motion," but nonetheless "read [the Trustee's] papers[,] late . . . filed though they were," and concluded "[t]hey don't raise a factual dispute." (App. 456-57.) As such, the Court granted AMS's motion. The District Court affirmed, and the Trustee has appealed.

## II.[2]

We "'exercise plenary review over the District Court's appellate review of the Bankruptcy Court's decision,'" applying "'the same standard of review as the District Court in reviewing the Bankruptcy Court's determinations.'" *Ettinger & Assocs., LLC v. Miller (In re Miller)*, 730 F.3d 198, 203 (3d Cir. 2013) (citation omitted). Our review of the grant of summary judgment is *de novo*. *U.S. Gypsum Co. v. Quigley Co. (In re G-I Holdings, Inc.),* 755 F.3d 195, 201 (3d Cir. 2014).

## III.

The Trustee's primary argument before us is that the Bankruptcy Court misapplied the summary judgment standard by failing to require AMS to show its entitlement to judgment as a matter of law. Summary judgment is, of course, proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[2] The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157(b) and 1334, and the District Court had jurisdiction under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291.

4

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056 (applying Rule 56 to adversary proceedings). However, a failure of proof on one of the essential elements of a claim renders both of these requirements met. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The Trustee sought to avoid National Pool's payments to AMS under 11 U.S.C. § 544(b), which permits the avoidance of transfers "voidable under applicable law by a creditor holding an unsecured claim that is allowable." The Trustee invoked, as the "applicable law," two sections of the NJUFTA: N.J.S.A. §§ 25:2-25(b) and 25:2-27(a). Under the former, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due."

N.J.S.A. § 25:2-25(b). Under N.J.S.A. § 25:2-27(a), "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or

obligation," and the debtor was either insolvent at the time or became insolvent as a result of the transfer.

To succeed under either provision (and, by extension, on the claims dependent on a successful avoidance claim), the Trustee had to show that National Pool did not receive "reasonably equivalent value" for its payments to AMS. *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 630 (3d Cir. 2007).[3] This involves a factual inquiry into whether it received *any* value; and if so, whether, under the totality of the circumstances, that value was "reasonably equivalent" to what it paid. *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 212-13 (3d Cir. 2006). The latter considers (1) "the 'fair market value' of the benefit received," (2) whether the relationship was arms-length, and (3) "the transferee's good faith." *Fruehauf*, 444 F.3d at 213 (citation omitted).

In its motion, AMS amply supported its assertion of reasonably equivalent value, providing, *inter alia*, an affidavit of its vice president and chief operating officer explaining how the business relationship was formed and operated, the signed agreement between the companies, consultants' billing records (detailing the substance of nearly 1,300 hours of work), invoices, and National Pool's checks in payment of those invoices.[4] AMS's submission demonstrates that, at the time National Pool made the

---

[3] In *VFB*, 482 F.3d at 631, which involved the same statutes, we predicted that the New Jersey Supreme Court would agree with our approach to determining "reasonably equivalent value" under the corresponding provision of the Bankruptcy Code, 11 U.S.C. § 548(a)(1)(B)(i).

[4] The Trustee waived the argument that AMS's evidence was inadmissible hearsay by failing to raise the issue before the Bankruptcy Court. *In re Reliant Energy Channelview*

payments, it was "'legitimate and reasonable'" to expect that AMS's efforts would confer at least some value on National Pool. *See Fruehauf*, 444 F.3d at 212. The record also suggests that AMS charged its standard fees in exchange for its services, and illuminates, at minimum, an arms-length relationship between the companies (the only exception being that National Pool purportedly hired away one of the consultants around the time it terminated the agreement) that was conducted in good faith and with AMS's expectation that its services would result in a significant return on investment for National Pool.

In response, the Trustee, whose burden it was to prove that National Pool received less than reasonably equivalent value, *id.* at 211, disputed none of AMS's factual assertions (thus permitting them to be deemed undisputed, Fed. R. Civ. P. 56(e)(2)), and presented no evidence of its own. It is well-established that "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," risks summary judgment against it. *Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element" of the non-movant's claim "necessarily renders all other facts immaterial," and thus "there can be 'no genuine [dispute] as to any material fact" sufficient to survive the motion. *Id.* at 323. Moreover, judgment as a matter of law becomes appropriate. *See id.*; *accord Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) ("[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial,

---

*LP*, 594 F.3d 200, 209 (3d Cir. 2010) ("[Appellant] did not raise this claim in the Bankruptcy Court, and we will not consider new claims for the first time on appeal.").

there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law."). The Trustee's total failure to rebut AMS's showing compels affirmance.[5]

The Trustee's remaining arguments are equally unavailing. Summary judgment was not improperly granted "by default" or as a sanction; it was granted because AMS met the requisite standards and the Trustee's opposition was substantively insufficient. Further, although the Bankruptcy Court's rationale could have been more detailed, it was adequate: AMS had shown, without challenge, reasonably equivalent value, thereby negating an essential element of the Trustee's claims, and the Trustee failed to raise a factual dispute. Finally, it was not error to deny the Trustee an opportunity to conduct additional discovery. Having made in its opposition only a passing request relating to the "parameters" for the outstanding deposition (App. 448), the Trustee did not comply with the predicate for the relief it now seeks, namely, "show[ing] by affidavit or declaration, that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).

IV.

The order of the District Court will be affirmed.

---

[5] AMS grounded its motion on the Trustee's failure to establish an element of its claim, not on its own establishment of an affirmative defense under 11 U.S.C. § 548(c). The Trustee's attempt to shift the burden of proof by arguing otherwise is unpersuasive. To the extent the Bankruptcy Court spoke of a "reasonably equivalent value defense," we do not read this reference to compel the result the Trustee seeks. In any event "we may affirm . . . on any grounds supported by the record," *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc).